UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-09209 MMM (Ex) | Date | February 10, 2014 |

| | |
|---|---|
| Title | *Jessica Aparicio v. Abercrombie & Fitch Stores Inc et at* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order to Show Cause Why Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction

## I.   BACKGROUND

### A.   Factual and Procedural Background

On January 16, 2013, Jessica Aparicio filed this putative class action in Los Angeles Superior Court against Abercrombie & Fitch Stores ("Abercrombie") and certain fictitious defendants.[1] On March 21, 2013, plaintiffs filed a first amended complaint.[2] On December 13, 2013, Abercrombie removed the action to this court, invoking the court's jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d).[3]

The original complaint alleges failure to provide rest breaks in violation of California Labor Code § 226.7; waiting time penalties under California Labor Code § 203; and violation of the Unfair

---

[1]Notice of Removal ("Removal"), Docket No. 1 (Dec. 13, 2013), Declaration of Charles F. Baker ("Baker Decl."), Exh. A ("Complaint").

[2]Baker Decl., Exh. L ("FAC").

[3]Removal.

Competition Law, Business and Professions Code § 17200 ("UCL").[4] The first amended complaint realleges these claims and adds a fourth cause of action under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2699.[5] The first amended complaint defines the purported class as "[a]ll hourly employees employed by Abercrombie & Fitch Stores, Inc., making less than two times the minimum wage who have worked a major fraction of a four hour period for one or more shifts in the State of California from four years prior to the filing of this action through the present."[6] The original and first amended complaints allege that the amount in controversy exceeds $25,000[7] and that the class consists of at least 90 hourly employees.[8] Aparicio seeks compensatory damages, penalties under Labor Code §§ 203 and 2699, interest, restitution under the UCL, costs and attorneys' fees, and a court order enjoining Abercrombie from failing to provide plaintiffs with proper rest breaks pursuant to Labor Code §§ 226.7 and 512 and IWC 5-2001.[9]

### B.   Settlement Discussions Prior to Removal

On November 13, 2013, Aparicio responded to Abercrombie's request for an opening settlement demand with an email, which stated that his lawyers had "analyzed the data [Abercrombie] provided . . . and . . . believe[d] the full exposure, assuming all penalties are awarded, is around 16 million dollars."[10] On November 18, 2013, Abercrombie responded that it did not understand how Aparicio had calculated such a number, "which ma[de] it difficult to evaluate where to go from here." It requested that Aparicio explain "how [she] arrive[d] at a full exposure amount of around 16 million dollars. . . ."[11] Aparicio replied the same day, and provided her damages model, which she asserted "ha[d] no assumptions, because it [was] based entirely on the data [Abercrombie had] provided. . . ." Aparicio noted that "[t]he bulk of the damages stem from the claims for penalties pursuant to Labor Code Section 203 (for former employees only) and PAGA[ because] . . . PAGA

---

[4]Complaint, ¶¶ 30-47.

[5]FAC, ¶¶ 31-53.

[6]*Id.*, ¶ 21.

[7]Complaint at 11.

[8]*Id.*, ¶ 23; FAC, ¶ 24.

[9]FAC at 9-10 (prayer).

[10]Declaration of Natalie M. McLaughlin ("McLaughlin Decl."), ¶¶ 3, 4; *id.*, Exh. 1.

[11]*Id.*, ¶ 5; *id.*, Exh. 2.

permits a $100 penalty for the first violation and a $200 penalty for subsequent violations."[12]  The damages model listed the following amounts:[13]

| Rest Break Premium | $        682,848.08 |
|---|---|
| Interest (3/1/14) | $          99,246.82 |
| § 203 | $     7,105,934.40 |
| § 2699 | $     8,997,000.00 |
| **Total** | **$16,885,029.30** |

The damages model appears to calculate rest break damages assuming a class of 3,338 former employees; an average hourly rate of $8.87; 76,984 shifts worked; and a rest break violation during 100% of the shifts.[14]  It appears to calculate § 203 damages assuming that all former employees worked 8 hours per day and none was paid for 30 days following termination.[15]  The assumptions underlying the calculation of § 2699 penalties are unclear.  Abercrombie's attorney states in her declaration that "[d]efendant has not produced data that supports the assumption that all 3,338 former employees worked eight hours per day and were not paid all wages due for 30 days after termination."[16]

## II.  DISCUSSION

### A.     Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.  See, e.g., *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress" (citations omitted)).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states.  See 28 U.S.C. §§ 1441(a), (b); see also *id.*, § 1446 (setting forth removal procedures generally); *id.*, § 1453 (setting forth removal procedures for class actions).  Only those state court actions that could originally have

---

[12] *Id.*, ¶ 6; *id.*, Exh. 3.

[13] *Id.*

[14] Removal, ¶ 12; McLaughlin Decl., Exh. 3.

[15] Removal, ¶ 13; McLaughlin Decl., Exh. 3.

[16] McLaughlin Decl., ¶ 8.

been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending . . ."); see also, e.g., *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant").

The Ninth Circuit "strictly construe[s] the removal statute[s] against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B.    Whether Removal Was Timely

28 U.S.C. § 1446(b) governs the timing of removal. It provides that a defendant has thirty days to file a notice of removal once it learns that an action is removable. See 28 U.S.C. §1446(b). This thirty day period begins to run "'from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992), and citing *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) ("[W]e will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper")).

If the amount in controversy is not clear on the face of the initial pleading, however, the thirty-day period for removal does not "begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (quoting 28 U.S.C. §1446(b)). By focusing on the objective facts contained in documents exchanged by the parties, this bright-line rule aims to bring "bring certainty and predictability to the process and avoids gamesmanship in pleading" on the part of the plaintiff. *Harris*, 425 F.3d at 697.

A document reflecting a settlement demand in excess of the jurisdictional minimum constitutes "other paper" sufficient to provide notice that a case is removable; consequently, it triggers the thirty day window under § 1446(b). *Babasa v. Lenscrafters, Inc.*, 498 F.3d 972, 974-75 (9th Cir. 2007) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("[a] settlement letter is relevant

evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *Ambriz v. Luxury Imports of Sacramento Inc.*, No.C08-01004 JSW, 2008 WL 1994880, *2 (N.D. Cal. May 5, 2008) ("Because Chase failed to remove this action within thirty days of receiving the settlement demand letter, Chase's removal was untimely"); *Krajca v. Southland Corp.*, 206 F.Supp.2d 1079, 1081-82 (D. Nev. 2002) ("[T]he Ninth Circuit decision in *Cohn v. Petsmart, Inc.* clarified the law with respect to the use of settlement letters as probative of the amount in controversy"); *Del Real v. Healthsouth Corp.*, 171 F.Supp.2d 1041, 1043 (D. Ariz. 2001) ("[A]s to whether a demand letter is admissible as evidence, many courts have ruled that even if the initial pleading in a case does not support the amount in controversy requirement for diversity jurisdiction, defendants may use a variety of documents, including a written settlement demand, as 'other paper,' to determine if the case is removable").  See also *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997) ("Chase has asserted the value of her claim by making a settlement offer for over twice the jurisdictional amount, by refusing Shop 'N Save's request to admit that she would not seek more than $50,000 in damages, and by specifically alleging a laundry list of serious and disabling injuries that will result in present and future damages"); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("Plaintiff . . . has offered to settle the case for $45,000.  While this settlement offer, by itself, may not be determinative, it counts for something.  Defendant also offered no proof that plaintiff's prayer is grossly inconsistent with her alleged damages"); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000, it is 'apparent' that removal was proper").

Here, neither the original nor first amended complaint alleged an amount in controversy that indicated the jurisdictional threshold was met.  The original complaint merely states that damages exceeded $25,000.  Nor did either complaint allege a class size exceeding 100; rather, each complaint alleged only that the class exceeded 90 members.  Thus, the thirty day period did not begin to run upon the filing of either complaint.  Furthermore, there is no evidence that there was any "other paper" that would have triggered the thirty day period prior to Aparicio's emails on November 13 and 18.  Assuming, therefore, that Aparicio's November 13 email constitutes "other paper" that triggered the thirty day period, Abercrombie's removal on December 13 was within thirty days and was timely.

    C.   **Whether this Case Was Properly Removed under 28 U.S.C. § 1332**

      1.   **Legal Standard Governing CAFA Jurisdiction**

In 2005, Congress enacted the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4.  CAFA gives district courts original jurisdiction to hear class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luthis v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction

over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA also provided for such class actions to be removable to federal court. See 28 U.S.C. § 1453(b). CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

    **2.**    **Minimal Diversity**

Minimal diversity exists where any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(2)(A). Section 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

A person is a citizen of the state in which she has her domicile, i.e., a permanent home where she intends to remain or to which she intends to return. See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). A person's residency does not determine her citizenship for purposes of diversity jurisdiction. *Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks

of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile").

Aparicio does not allege her citizenship, stating only that she is a resident of California.[17] The notice of removal likewise alleges only that Aparicio is a resident of California.[18] This is insufficient to establish citizenship. Because Abercrombie has failed adequately to allege Aparicio's citizenship, and has not alleged the citizenship of any other class member, it has failed to carry its burden of showing that the citizenship of the parties is minimally diverse. See *Kanter*, 265 F.3d at 857 ("In this case, neither Plaintiffs' complaint nor Pfizer's notice of removal made any allegation regarding Plaintiffs' state citizenship. Since the party asserting diversity jurisdiction bears the burden of proof, Pfizer's failure to specify Plaintiffs' state citizenship was fatal to Defendants' assertion of diversity jurisdiction"); *HSBC Bank USA, NA v. Valencia*, No. 09–CV–1260–OWW–JLT, 2010 WL 546721 *5 (E.D. Cal. Feb. 10, 2010) ("The complaint and the notice of removal fail to indicate Plaintiff's state of citizenship, and this too is fatal to Defendants' assertion of diversity jurisdiction"). The court, therefore, is unable to determine that CAFA's minimal diversity requirement is satisfied.

### 3. Numerosity Requirement

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). The damages model estimates that the class consists of 3,338 former employees and 2,999 current employees.[19] Thus, the numerosity requirement is satisfied.

### 4. Amount in Controversy

"A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn*, 281 F.3d at 840. A plaintiff's damage estimate will not establish the amount in controversy, however, if it appears to be only a "bold optimistic prediction." *Molina v. Lexmark Intern.,* Inc., No. CV 08-04796 MMM (FMx), 2008 WL 4447678,

---

[17]Complaint, ¶ 7; FAC, ¶ 8.

[18]Removal, ¶ 27.

[19]McLaughlin Decl., Exh. 3.

*4 (C.D. Cal. Sept. 30, 2008) (quoting *Surber v. Reliance Nat'l Indem. Co.*, 110 F.Supp.2d 1227, 1232 (N.D. Cal. 2000)).  Aparicio's November 13 email does not explain how she arrived at a damages estimate of more than $16 million.  Based on the present record, therefore, the court cannot find that the settlement demand reflected a "reasonable estimate" of class damages.  See *Owens v. Westwood College Inc.*, No. CV 13–4334–CAS–(FFMx), 2013 WL 4083624, *3 (C.D. Cal. Aug. 12, 2013) ("Here, the May 15 letter does not offer any explanation for how plaintiff calculated the $1.5 million demand 'reasonable estimate' of plaintiff's claim, and thus could not be 'relevant evidence of the amount in controversy,'" quoting *Cohn*, 281 F.3d at 840).

In her email, Aparicio asserted that the November 18 damages model made "no assumptions, because it [was] based entirely on the data [Abercrombie] provided. . . ."  Abercrombie's attorney, however, contends that it did "not produce[ ] data that supports the assumption that all 3,338 former employees worked eight hours per day and were not paid all wages due for 30 days after termination."[20]  Further, she contends that Abercrombie cannot discern how Aparicio calculated PAGA penalties.  The damages model identifies no other source that purportedly supports the figures set forth in the model.  Because Aparicio identifies Abercrombie's data as the sole source supporting her damages model, and Abercrombie contends that its data does not support the model, the court is unable to conclude that the model sets forth a "reasonable estimate" as opposed to a "bold optimistic prediction" regarding damages.  Accordingly, Abercrombie does not appear to have established, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.[21]

---

[20]McLaughlin Decl., ¶ 8.

[21]As noted, Aparicio seeks to recover penalties under PAGA, California Labor Code § 2699.  That statute states:
> "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."  *Id.*, § 2699(a).

Under PAGA, "[f]or all provisions of this code except those for which a civil penalty is specifically provided," an aggrieved employee may seek civil penalties of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation" from an employer that employs more than one employee.  *Id.*, § 2699(f).  Aparicio's damages model calculates that Abercrombie's Labor Code violations generated $8,997,000 in potential PAGA damages.

Seventy-five percent of the civil penalties recovered under PAGA are awarded to the Labor and Workforce Development Agency ("LWDA"); "aggrieved employees" can recover only 25 percent of the penalties.  See CAL. LAB. CODE § 2699(I) ("[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees").  Some

---

courts have held that the fact the LWDA shares in the recovery is irrelevant in assessing the amount in controversy. See *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616 AWI SKO, 2010 WL 2793650, *8 (E.D. Cal. July 14, 2010) (holding that a plaintiff seeking PAGA penalties places 100% of the penalty amount in controversy); *Urbino v. Orkin Services*, CV 11-06456 CJC (PJWx), Docket No. 33 (Oct. 5, 2011) ("This Court agrees with the *Thomas* court and finds that the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees"); *Thomas v. Aetna Health of California, Inc.*, No. 1:10–cv–01906–AWI–SKO, 2011 WL 2173715, *19 (E.D. Cal. June 2, 2011) ("[T]he amount at stake in a PAGA claim is predicated on the total amount of the penalties that can be sought by the aggrieved employees as the proxy of the LWDA").

Other courts, however, have concluded that only the 25 percent of the penalties recoverable by the aggrieved employees should be considered for purposes of the amount in controversy requirement. See *Smith v. Brinker Int'l, Inc.*, No. C 10-0213 VRW, 2010 WL 1838726, *2, 5 (N.D. Cal. May 5, 2010) (including only 25 percent of the total recovery possible under PAGA in calculating the amount in controversy); *Pulera v. F & B, Inc.*, No. 2:08-cv-00275 MCE DAD, 2008 WL 3863489, *4 (E.D. Cal. Aug. 19, 2008) ("The amounts recoverable by Plaintiff based on her PAGA claims are separate and distinct from the amounts recoverable by the State of California via the LWDA, and therefore these amounts may not be aggregated").

While the court acknowledges the split in authority, on balance it finds the reasoning of the *Smith* and *Pulera* courts more persuasive. The courts' disagreement concerns the "common and undivided interest" exception to the general rule that "aggregated claims of multiple claimants cannot form the basis of the amount in controversy." *Pulera*, 2008 WL 3863489 at *3. The *Thomas* and *Urbino* courts relied heavily on the view that PAGA was designed to vindicate a collective, rather than an individual, right. The *Thomas* court compared PAGA to a shareholder derivative action, where "the corporation sustains the primary injury. . . . As a result, the shareholders step into the shoes of the corporation and assert its interests – they have no *individual* right to recovery." *Thomas*, 2011 WL 2173715 at *17. The *Urbino* court agreed with this analysis, stating that "a PAGA action is essentially a law enforcement action designed to benefit the public, not to compensate aggrieved employees." *Id.* at 14.

The analogy those courts draw is apt, but it does not tell the whole story. As the *Pulera* court noted, the aggregation of employees' individual rights does not compel their aggregation with the rights of a state agency, the LWDA. Citing *Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911), the *Pulera* court observed that the "common and undivided interest" exception relies on the notion that "neither [party] can enforce [the claim] in the absence of the other." *Pulera*, 2008 WL 3863489 at *3. Under PAGA, "[h]owever, the LWDA can choose to enforce those claims itself, regardless of the employee's involvement," just as employees can, if the LWDA approves, sue without any direct involvement by the agency. The statute thus permits either the LWDA or the aggrieved employees to act independently to enforce the Labor Code. *Id.* This cuts against aggregating the agency's claims with the employees' claims, even if the employees' individual claims should be aggregated under the "common and undivided interest" exception. Consequently, the court concludes that only 25 percent of the recovery possible on Aparicio's PAGA cause of action can be included in calculating the amount in controversy. Thus, even if Aparicio's damage model were a reasonable estimate of damages (a conclusion, as noted, the court cannot reach), the amount in

See *Prevett v. Diamond Auto Glass, Inc.*, No. CV-05-179-RHW, 2005 WL 2346958, *2 (E.D. Wash. Sept. 26, 2005) (" Where doubt regarding the right to removal exists, the case should be remanded to state court," citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003), and *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996)).

### III.  CONCLUSION

Abercrombie has failed to demonstrate the existence of minimal diversity and has failed to show by a preponderance of the evidence that the jurisdictional amount is satisfied.  See *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  The court accordingly orders Abercrombie to show cause on or before **February 18, 2014** why this action should not be remanded to Los Angeles Superior Court for lack of subject matter jurisdiction.  Plaintiff may file a reply on or be fore **February 25, 2014.**  Abercrombie's failure to respond by **February 18, 2014** will result in immediate remand without further notice.

---

controversy on Aparicio's PAGA claim would be $2,249,250 ($8,997,000 x 25 percent).  Adding this sum to Aparicio's estimate of rest break damages equals $2,932,098.08, less than the $5 million threshold.  The court cannot include interest in determining the amount in controversy.  28 U.S.C. § 1332(d)(2).  Because rest break and PAGA damages fall below the jurisdictional minimum, and Abercrombie itself asserts that the damages model does not provide a "reasonable estimate" of the waiting time penalties, the court would be unable to conclude that the amount in controversy requirement is satisfied even were it to use the figures in Aparicio's damages model as a starting point.