SHEPPARD, MULLIN, RICHTER, & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
CHARLES F. BARKER, CAL. BAR NO. 70076
Email: cbarker@sheppardmullin.com
333 South Hope St., 48th Floor
Los Angeles, California 90071
Telephone: (213) 617-4168
Facsimile: (213) 620-1398

VORYS, SATER, SEYMOUR AND PEASE LLP
MARK A. KNUEVE (admitted *pro hac vice*)
NATALIE M. McLAUGHLIN (admitted *pro hac vice*)
Email: maknueve@vorys.com; nmmclaughlin@vorys.com
52 E. Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Attorneys for Defendant
ABERCROMBIE & FITCH STORES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA APARICIO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABERCROMBIE & FITCH STORES, INC.; and DOES 1 to 50, Inclusive,<br><br>Defendants. | Case No. CV 13-09209 MMM (Ex)_____<br><br>**CLASS ACTION**<br><br>**DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S RESPONSE TO THE COURT'S SHOW CAUSE ORDER OF FEBRUARY 10, 2014**<br><br>Jurisdiction Under the Class Action Fairness Act of 2005<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

SMRH:417628407.2

-1-

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND.................................................................................2

II.    MINIMAL DIVERSITY EXISTS BETWEEN THE PARTIES ...............5

III.   THE AMOUNT IN CONTROVERSY EXCEEDS THE $5,000,000
JURISDICTIONAL MINIMUM ..........................................................8

IV.   CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Altamirano v. Shaw Indus.*
2013 U.S. Dist. LEXIS 84236 ................................................................ 11, 13

*Angeles v. Monumental Life Ins. Co.*
2010 U.S. Dist. LEXIS 57748 (N.D. Cal. May 21, 2010) ........................... 9

*Armstrong v. Church of Scientology Int'l*
2000 U.S. App. LEXIS 28085 (9th Cir. Nov. 8, 2000) ............................... 5

*Babasa v. LensCrafters, Inc.*
498 F. 3d 972 (9th Cir. 2007) ..................................................................... 8

*Behrazfar v. UNISYS Corp.*
687 F. Supp. 2d 999 (C.D. Cal. 2009) ...................................................... 11

*Chambers v. CVS Pharmacy, Inc.*
2009 U.S. Dist. LEXIS 73472 (S.D. Cal. Aug. 19, 2009) ......................... 13

*Ellis v. Pac. Bell Tel. Co.*
2011 U.S. Dist. LEXIS 16045 (C.D. Cal. Feb. 10, 2011) ......................... 12

*Galt G/S v. JSS Scandinavia*
142 F.3d 1150 (9th Cir. 1998) .................................................................. 13

*Guglielmino v. McKee Foods Corp.*
506 F.3d 696 (9th Cir. 2007) .................................................................... 13

*Harvey v. Bank of Am., N.A.*
906 F. Supp. 2d 982 (N.D. Cal. 2012) ........................................................ 6

*Heejin Lim v. Helio, LLC*
2012 U.S. Dist. LEXIS 12871 (C.D. Cal. Feb. 2, 2012) ............................. 9

*Hernandez v. Towne Park, Ltd.*
2012 U.S. Dist. LEXIS 86975 (C.D. Cal. June 22, 2012) ........................... 9

*Hurd v. Am. Income Life Ins.*
2013 U.S. Dist. LEXIS 147849 ............................................................. 8, 3

*James v. Childtime Childcare, Inc.*
2007 U.S. Dist. LEXIS 43753 ..................................................................... 9

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

*Jasso v. Money Mart Express, Inc.*
    2012 U.S. Dist. LEXIS 27215 ................................................................ 13

*Jimenez v. Allstate Ins. Co.*
    2011 U.S. Dist. LEXIS 3327 .................................................................. 11

*Johnson v. Mitchell*
    2012 U.S. Dist. LEXIS 63306 (E.D. Cal. May 4, 2012) .................... 5, 7

*Korn v. Polo Ralph Lauren Corp.*
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................. 3, 9

*Labastida v. McNeil Techs.*
    2010 U.S. Dist. LEXIS 124025 (S.D. Cal. Nov. 23, 2010) ............ 8, 9, 13

*Lewis v. Verizon Communs., Inc.*
    627 F.3d 395 (9th Cir. 2010) ............................................................ 3, 15

*Lowdermilk v. United States Bank Nat'l Assoc.*
    479 F.3d 994 (9th Cir. 2007) ............................................................ 9, 13

*Molnar v. 1-800-Flowers.com, Inc.*
    2009 U.S. Dist. LEXIS 131768 (C.D. Cal. Feb. 23, 2009) .................... 14

*Ray v. Wells Fargo Bank, N.A.*
    2011 U.S. Dist. LEXIS 53155 (C.D. Cal. May 9, 2011) .................. 3, 8, 9

*Rhoades v. Progressive Cas. Ins. Co.*
    410 F. App'x 10(9th Cir. 2010) .......................................................... 15

*Rippee v. Boston Market Corp.*
    408 F. Supp. 2d 982 (S.D. Cal. 2005) .................................................. 9

*Rodriguez v. AT&T Mobility Servs. LLC*
    728 F.3d 975 (9th Cir. 2013) .............................................................. 8

*Sanchez v. Monumental Life Ins. Co.*
    102 F.3d 398 (9th Cir. 1996) .............................................................. 10

*Saulic v. Symantec Corp.*
    2007 U.S. Dist. LEXIS 96640 ...................................................... 10, 11

*Soriano v. USAA Ins. Agency, Inc.*
    2010 U.S. Dist. LEXIS 76993 .............................................................. 8

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Stevenson v. Dollar Tree Stores, Inc.*
   2011 U.S. Dist. LEXIS 119801 ................................................................................. 12

<u>Statutes</u>

28 U.S.C. § 1332(a) ................................................................................................... 13

28 U.S.C. § 1332(d)(2)(A) .......................................................................................... 5

28 U.S.C. § 1332(d)(6) ............................................................................................... 8

28 U.S.C. §§ 1332(d) and 1453 ................................................................................. 2

Business & Professions Code § 17200 ................................................................. 2, 3

California Code of Civil Procedure § 382 ................................................................. 2

Labor Code § 203 ................................................................................................. 2, 12

Labor Code § 226.7 .................................................................................................... 2

Labor Code § 2699 ..................................................................................................... 3

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1    Defendant Abercrombie & Fitch Stores, Inc. ("Defendant" or "Abercrombie")
2  hereby responds to the Show Cause Order directing Defendant to show cause why
3  this action should not be remanded to Los Angeles Superior Court for lack of
4  subject matter jurisdiction.  Specifically, the Order directs Defendant to demonstrate
5  the existence of minimal diversity and to show by a preponderance of the evidence
6  that the jurisdictional amount is satisfied.  (Dkt. #18).

7    As shown below and in Defendant's Notice of Removal (Dkt. #1), this Court
8  has original subject matter jurisdiction under the Class Action Fairness Act of 2005
9  ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because the number of putative class
10  members exceeds 100, minimal diversity exists, and the amount in controversy
11  exceeds $5,000,000.

12  **I.    BACKGROUND**

13    On January 16, 2013, Plaintiff Jessica Aparicio ("Plaintiff") individually and
14  on behalf of similarly situated individuals, filed this case in the Superior Court of
15  California, County of Los Angeles, as a putative class action pursuant to California
16  Code of Civil Procedure § 382.  The case was captioned *Jessica Aparicio, on behalf*
17  *of herself and others similarly situated, v. Abercrombie & Fitch Stores, Inc., and*
18  *Does 1 to 50, Inclusive*, Case No. BC 499281.  On March 21, 2013, Plaintiff,
19  individually and on behalf of similarly situated individuals, filed a First Amended
20  Class Action Complaint.

21    The Amended Complaint alleged four causes of action for monetary and
22  nonmonetary relief, including: (1) failure to allow rest breaks under Labor Code §
23  226.7 (Am. Complaint ¶¶ 31-34)[1]; (2) waiting time penalties pursuant to Labor
24  Code § 203 (*Id.* at ¶¶ 35-38); (3) unfair competition pursuant Business &
25
26  _____
27  [1]    The Complaint and Amended Complaint are attached to Dkt. #1.
28

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1  Professions Code § 17200 (*Id.* at ¶¶ 39-48); and (4) penalties pursuant to Labor

2  Code § 2699 ("PAGA") (*Id.* at ¶¶ 49-53).

3         On September 25, 2013, Defendant's counsel produced data to Plaintiff's

4  counsel regarding, among other things: (1) the number of potential class members

5  (employees that worked any of the identified categories of shift length set forth in

6  the Amended Complaint during the proposed class period); (2) the number of shifts

7  worked by those potential class members in the identified categories of shift length

8  set forth in the Amended Complaint; (3) the hourly rates of each potential class

9  member for each shift at issue; and (4) the hire and termination dates for each

10  potential class member.  See Second McLaughlin Decl. ¶ 3, which is attached hereto

11  as Exhibit 1.[2]

12         The data produced confirms: (1) there are 6,337 potential class members,

13  composed of 3,338 former employees and 2,999 then–current employees; (2) there

14  are 76,984 shifts that fall in the categories of shift length set forth in the Amended

15  Complaint; and (3) the average hourly rate for employees who worked the shifts at

16  issue was $8.87. *See Second McLaughlin Decl.* ¶ 4.

17

18  _____

19  [2]      In considering whether to remand, "[A] court may also consider supplemental
20  evidence later proffered by the removing defendant, which was not originally
     included in the removal notice" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d
21  1199, 1205(E.D. Cal. 2008) (*citing Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1
     (9th Cir. 2002)). There is no need for Defendant to produce the business records
22  themselves to support removal; rather, when a defendant must prove the amount in
23  controversy by a preponderance of the evidence, a declaration or affidavit may
     satisfy the burden.  *Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, at
24  **15-16 (C.D. Cal. May 9, 2011); *see Hurd v. Am. Income Life Ins.*, 2013 U.S. Dist.
25  LEXIS 147849, at **15-16 (C.D. Cal. Oct. 10, 2013) (holding that a removing
     defendant can satisfy its burden "by producing a declaration or affidavit that
26  potential damages could exceed the jurisdictional amount"); *Lewis v. Verizon*, 627
27  F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing
     defendant . . . supplied an affidavit to show that the potential damages could exceed
28

On November 13, 2013, Plaintiff's counsel emailed Defendant's counsel, stating, "we believe the full exposure, assuming all penalties are awarded, is around 16 million dollars." (Dkt. #1 at ¶ 4, Ex. 1). On November 18, 2013, Plaintiff's counsel provided the damage model they generated for the case. (*Id.* at ¶ 6, Ex. 3). Plaintiff's counsel asserts that the damage model is based on the data provided by Defendant. (*Id.*)

From these numbers, Plaintiff's counsel predicted the following damages exposure in this case:

|  |  |
|---|---|
| RB Premium | $682,848.08 |
| Interest (3/1/14) | $99,246.82 |
| 203 | $7,105,934.40 |
| 2699 | $8,997,000.00 |
| Total | $16,885,029.30 |

(See id.)

On December 13, 2013, relying upon Plaintiff's settlement demand and damage model, Defendant removed this action to the United States District Court for the Central District of California pursuant to CAFA. (Dkt. #1). Plaintiff did not file any motion to remand.

On February 10, 2014, this Court issued an Order requesting that Defendant show cause in writing why this case should not be remanded. (Dkt. #18). Specifically, the Court ordered Defendant to demonstrate minimal diversity by establishing that Plaintiff's citizenship or the citizenship of any other class member is diverse from Defendant's citizenship. (Dkt. #18 at 7). The Court also ordered Defendant to establish by a preponderance of the evidence that the amount in

---

the jurisdictional amount. We conclude that this showing satisfies Verizon's burden.").

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1   controversy exceeds the jurisdictional threshold. (*Id.* at 8). Defendant responds as
2   follows.

3   **II.**      **MINIMAL DIVERSITY EXISTS BETWEEN THE PARTIES**

4          Jurisdiction under CAFA requires that minimal diversity exists between the
5   Defendants and all putative class members, which exists where "any member of a
6   class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §
7   1332(d)(2)(A).

8          Defendant's citizenship is established as Ohio. (Dkt. #1). Therefore, at issue
9   is whether Plaintiff or any other class member is a citizen of any other state besides
10   Ohio. "For purposes of diversity jurisdiction, an individual is a citizen of his or her
11   state of domicile, which is determined at the time the lawsuit is filed." *Armstrong v.*
12   *Church of Scientology Int'l*, 2000 U.S. App. LEXIS 28085, at *3 (9th Cir. Nov. 8,
13   2000) (citing *Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986)). A person's domicile
14   is the "location where he or she has established a fixed habitation or abode in a
15   particular place, and [intends] to remain there permanently or indefinitely." *Johnson*
16   *v. Mitchell*, 2012 U.S. Dist. LEXIS 63306, at *25 (E.D. Cal. May 4, 2012) (citing
17   *Lew v. Moss*, 797 F.2d 747, 749-750 (9th Cir. Cal. 1986)). A person's old domicile
18   is not lost until a new one is acquired. *Id.* Furthermore, a change in domicile
19   requires both: (a) physical presence at the new location, and (b) intention to remain
20   their indefinitely. *Id.*

21          Plaintiff acknowledged in her Complaint that she was a resident of California
22   at the time she filed her Complaint on January 16, 2013. (Complaint ¶ 7). She also
23   acknowledged she was a resident of California at the time she filed her Amended
24   Complaint on March 13, 2013. (*See* Amended Complaint ¶ 8).

25          Defendant's business records concerning Plaintiff's employment show the
26   following facts related to Plaintiff's domicile: (1) she is a United States citizen; (2)
27   she lived in California at the time she applied to work for Defendant; (3) her two
28

SMRH:417628407.2                                    -5-

1  former employers were located in California; and (4) she attended high school and

2  college in California. *See Second McLaughlin Decl.* ¶ 5, Ex. A.

3        Moreover, a public records search[3] for Plaintiff indicates: (1) she currently

4  lives in California (13 months after she filed her original Complaint); (2) all her

5  other associated addresses have been in California; (3) her Social Security number

6  was issued in California; (4) all relatives associated with her live in California; and

7  (5) her cellular phone is registered in California. *See Second McLaughlin Decl.* ¶ 6,

8  Ex. B.  There is nothing in the public records search that connects Plaintiff to Ohio

9  or any other state besides California. *See id.; See Harvey v. Bank of Am., N.A.,* 906

10 F. Supp. 2d 982, 988 n. 2 (N.D. Cal. 2012)(noting longtime residency in California

11 indicates California citizenship).

12       The applications of four other potential class members who all currently work

13 for Defendant in California stores were also reviewed (*see* Second McLaughlin

14 Decl. ¶ 7, Ex. C), as minimal diversity can also be established by showing that

15 another potential class member is domiciled outside of Ohio.  (*See* Dkt. #18 at 7).

16       The applications of these four other potential class members who currently

17 work in California show that: (1) they all lived in California at the time they applied

18 to work for Defendant; (2) their former employers were located in California; and

19 (3) they attended high school and college in California. *See Second McLaughlin*

20 *Decl.* ¶ 7, Ex. C.

21       Moreover, a public records search for these four potential class members

22 indicates: (1) they currently live in California; (2) all their previous addresses have

23 been in California; (3) their Social Security numbers were issued in California; (4)

24 all relatives associated with them live in California; and (5) their cellular phones are

25

26 _____

27 [3]    The Court can rely upon public records to establish citizenship. *See*

28 *Martingale Invs., LLC v. Johnson,* 2013 U.S. Dist. LEXIS 39766, at *2 (C.D. Cal.

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1 | registered in California. *See Second McLaughlin Decl.* ¶ 8, Ex. D.  There is nothing
2 | in the public records search that connects these four individuals to Ohio or any other
3 | state besides California. *See id.*

4 |       Based on the Amended Complaint, Defendant's employment records, and
5 | public records, the evidence shows that the only state Plaintiff and these four
6 | potential class members have any connection to is California.  Public records
7 | indicate that these individuals were residing in California at the time the Complaint
8 | was filed (January 2013) and continue to reside in California as of the present date
9 | (13 months later). *See Second McLaughlin Decl.* ¶ 9, Exs. B and D.

10 |       Therefore, the evidence shows that these individuals have had a fixed
11 | habitation in California and that California was not just where these individuals
12 | were residing when the Complaint was filed, but is also their permanent home where
13 | they intend to remain permanently or indefinitely.  These individuals cannot lose
14 | their domicile of California until they establish physical presence at a new location
15 | and show an intention to remain at that new location indefinitely. *See Johnson*,
16 | 2012 U.S. Dist. LEXIS 63306 at *25.  Public records do not indicate physical
17 | presence at any location outside of California. *See Second McLaughlin Decl.* ¶ 9,
18 | Exs. B and  D.

19 |       Therefore, Defendant has shown by a preponderance of the evidence that
20 | Plaintiff and four other potential class members are domiciled in California, and
21 | because Defendant is domiciled in Ohio, there is minimal diversity.[4]

22 |
23 |

24 | Mar. 19, 2013); *WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC*, 2013
25 | U.S. Dist. LEXIS 34352, at *7 (D. Nev. Mar. 11, 2013).

26 | [4]    If this Court does not believe this evidence is sufficient to establish domicile, then Defendant respectfully requests that the Court grant it 21 days to issue and
27 | obtain a response from Plaintiff to an expedited request for admission establishing
28 | her domicile.

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

III.   **THE AMOUNT IN CONTROVERSY EXCEEDS THE $5,000,000**
      **JURISDICTIONAL MINIMUM**

In order to remove a class action pursuant to CAFA, the aggregate amount in controversy for all class members must exceed $5,000,000. 28 U.S.C. § 1332(d)(6). The defendant seeking removal under CAFA must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). Under the preponderance of the evidence standard, a defendant simply must show that it is "more likely than not" that the jurisdictional threshold is met. *Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, at *13 (C.D. Cal. May 9, 2011) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404, (9th Cir. 1996)). "This burden is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiffs' claims for damages." *Ray*, 2011 U.S. Dist. LEXIS 53155 at *13 (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)).

When a plaintiff does not specifically declare an amount of damages in the complaint, the amount in controversy is an estimate of the amount that will be put at issue in the course of the litigation. *Hurd v. Am. Income Life Ins.*, 2013 U.S. Dist. LEXIS 147849, at **14-15 (C.D. Cal. Oct. 10, 2013) (citing *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "A plaintiff's reasonable settlement demand constitutes evidence sufficient to establish the amount in controversy by a preponderance of the evidence." *Labastida v. McNeil Techs.*, 2010 U.S. Dist. LEXIS 124025, at *8 (S.D. Cal. Nov. 23, 2010) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)); *Babasa v. LensCrafters, Inc.*, 498 F. 3d 972, 975 (9th Cir. 2007) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *Soriano v. USAA Ins. Agency, Inc.*, 2010 U.S. Dist. LEXIS 76993, at **5-6 (D. Nev. June 24, 2010) ("When the settlement demand is reasonable and the plaintiff does

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1  not contend that the amount assigned to his claim in his demand letter was inflated

2  or dishonest, the defendant can meet his burden based on the demand letter alone.");

3  *Angeles v. Monumental Life Ins. Co.*, 2010 U.S. Dist. LEXIS 57748, at \*6 (N.D.

4  Cal. May 21, 2010) (holding "plaintiff's reasonable settlement demand constitutes

5  evidence sufficient to establish the amount in controversy by a preponderance of the

6  evidence"); *James v. Childtime Childcare, Inc.*, 2007 U.S. Dist. LEXIS 43753, at

7  \*\*4-5 (E.D. Cal. May 31, 2007) (same).

8      For example, in *Labistida*, 2010 U.S. Dist. LEXIS 124025 at \*\*9-10,

9  Plaintiff's demand letter estimated PAGA penalties to be in excess of $4 million,

10  other penalties to be over $1 million, and wages owed to be just under $5 million,

11  and Plaintiff did not directly undermine the reasonableness of this estimate. *Id.* at

12  \*9.  Therefore, the Court found the defendant met its burden of proving by a

13  preponderance of the evidence that the amount in controversy – which was shown

14  by plaintiff's damage estimate – satisfied the jurisdictional threshold. *See id.* at \*10.

15      Critically, "the ultimate inquiry is, therefore, what amount is put 'in

16  controversy' by the plaintiff's complaint or other papers, not what the defendant will

17  actually owe for the actual number of violations that occurred." *Heejin Lim v.*

18  *Helio, LLC*, 2012 U.S. Dist. LEXIS 12871, at \*5 (C.D. Cal. Feb. 2, 2012); *Ray*,

19  2011 U.S. Dist. LEXIS 53155 at \*14 (same); *see also Korn v. Polo Ralph Lauren*

20  *Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (recognizing that "the ultimate

21  or provable amount of damages is not what is considered when determining the

22  amount in controversy; rather, it is the amount put in controversy by the plaintiff's

23  complaint"); *Babistida*, 2010 U.S. Dist. LEXIS 124025 at \*10 (same); *Rippee v.*

24  *Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (same);

25  *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007)

26  (finding if a plaintiff alleges damages in excess of the amount in controversy, the

27  requirement is presumptively satisfied unless it appears to a "legal certainty" that the

28  claim is actually for less than the jurisdictional minimum); *Hernandez v. Towne*

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1   *Park, Ltd.*, 2012 U.S. Dist. LEXIS 86975, at *16 (C.D. Cal. June 22, 2012) (same);

2   *Saulic v. Symantec Corp.*, 2007 U.S. Dist. LEXIS 96640, at **18-19 (C.D. Cal. Dec.

3   26, 2007) (the amount in controversy is determined by the amount demanded in

4   good faith, rather than the sum ultimately found to be due); *Sanchez v. Monumental*

5   *Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996) (when a plaintiff has made "express

6   allegations" about the amount in controversy, the court should accord those

7   allegations weight in determining the amount in controversy).

8       Plaintiff made a settlement demand of $16,000,000.00 based on a damages

9   model which estimated that damages totaled $16,885,029.30.  Defendant agrees that

10   the data it produced is the basis of almost all the calculations in the damage model;

11   and therefore, based on Plaintiff's allegation, most of Plaintiff's settlement demand

12   appears to reflect a reasonable estimate of the amount in controversy based on the

13   data.

14       Defendant does dispute Plaintiff's assertion that the data supports that the

15   3,338 employees worked eight hour shifts.  Review of the data provided to Plaintiff

16   shows that many shifts were below eight hours, as explained below.  However, even

17   with this lower number, the total damages that can be reasonably estimated from the

18   data Defendant provided based on Plaintiff's damage model are ***still*** over

19   $5,000,000.

20       Plaintiff has calculated that if there were a rest break violation during each of

21   the 76,984 shifts, the premium calculation would be $8.87 multiplied by the 76,984

22   shifts at issue, equaling $682,848.08.  (*See* Dkt. #1).  Defendant acknowledges that

23   the data it produced on September 25, 2013 supports this calculation of potential

24   damages. *See Second McLaughlin Decl.* ¶ 10.  Therefore, the reasonableness of this

25   estimate is not in dispute.[5]

26

27   [5]     Defendant provides these damages calculations based on Plaintiff's counsel's

28   damage model only to demonstrate that the amount in controversy exceeds five

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1        Plaintiff has next calculated that if every one of the 3,338 former employees

2    was willfully not paid for a missed rest break prior to termination, the 203 penalty

3    calculation would be the $8.87 hourly rate, multiplied by 3,338 class members who

4    are former employees, multiplied by the average shift hours worked, multiplied by

5    30 days. (See Dkt. #1 at ¶ 6, Ex. 3). Defendant does not dispute Plaintiff's use of

6    3,338 class members, the $8.87 hourly rate, or the 30 days. *See Saulic v. Symantec*

7    *Corp.*, 2007 U.S. Dist. LEXIS 96640, at **9-11 (C.D. Cal. Dec. 26, 2007) (citing

8    *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)

9    ("Courts as a matter of law, calculate the amount in controversy based upon the

10   maximum amount of civil penalties available to plaintiff."). The portion of

11   Plaintiff's calculation that Defendant could not reconcile with its data was Plaintiff's

12   conclusion that all employees worked eight hour shifts. *See Second McLaughlin*

13   *Decl.* ¶ 11.

14       In actuality, the data provided to Plaintiff shows that of the 76,984 shifts, one

15   third of the shifts range between three and a half and four hours, and two thirds of

16   the shifts worked are six hours or more. *See Second McLaughlin Decl.* ¶ 11. A

17   good faith estimate based on relatively conservative figures can establish the amount

18   in controversy by a preponderance of the evidence. *See Behrazfar v. UNISYS Corp.*,

19   687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009); *Jimenez v. Allstate Ins. Co.*, 2011 U.S.

20   Dist. LEXIS 3327, at **6-7 (C.D. Cal. Jan. 7, 2011); *see also Altamirano v. Shaw*

21   *Indus.*, 2013 U.S. Dist. LEXIS 84236, at **22-23 (N.D. Cal. June 14, 2013)

22   (holding that new information "removes much of the uncertainty, and the remaining

23   assumptions are reasonable" in light of the allegations and evidence submitted).

24   Taking the very low range of the shifts, it can conservatively and reasonably be

25   _____

26   million dollars. Defendant makes no admission of the propriety of class
     certification, liability, or damages with respect to any aspect of this case. Nor does

27   Defendant waive its right to ultimately contest the proper amount of damages due, if
     any, should Plaintiff prevail with respect to any of her claims.

28

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1    estimated based on the data that one third of the shifts were three and a half hours

2    and two thirds of the shifts were six hours. *See Second McLaughlin Decl.* ¶ 12.

3        Therefore, from Defendant's data, an estimate of the Labor Code Section 203

4    penalty calculation would be the addition of: (1) the $8.87 rate multiplied by six

5    hours, multiplied by 30 days, multiplied by 2,225 former employees (two thirds of

6    the former employees),; and (2) the $8.87 rate multiplied by three and a half hours,

7    multiplied by 30 days, multiplied by 1,113 former employees (one third of the

8    former employees). *See Second McLaughlin Decl.* ¶ 13.[6] This amounts to

9    $3,552,435 and $1,036,592.55, for a total of $4,589,027.55 in potential 203 penalty

10   damages. *Id.*

11       Defendant did not contend in its Notice of Removal that the Labor Code

12   Section 2699 penalty calculation was an unreasonable estimate of potential 2699

13   penalties. Rather, Defendant was unable to decipher how Plaintiff's counsel

14   calculated the 2699 penalty amount to be $8,997,000.00. *See Second McLaughlin*

15   *Decl.* ¶ 14. Plaintiff has not disclosed the formula used to calculate the alleged

16   PAGA damages. *See id.* Twenty-five percent of the 2699 penalties (which equals

17   $2,249,950.00) would be distributed to the aggrieved employees. See id.

18       However, as Plaintiff has asserted that there is $8,997,000.00 in controversy,

19   at the 25% rate approved by the Court (*see* Dkt. #18 at 8-9), Plaintiff has placed

20   $2,249,250.00 in controversy that can be considered in determining whether the

21   jurisdictional threshold has been met. As Plaintiff based her settlement demand on

22   _____

23   [6]    "Defendant was reasonable in estimating, based on plaintiff's allegations, that
24   all members of the proposed class — all assistant managers — would have missed a
     meal period as described in the complaint at least once and were thus entitled to the
25   waiting time penalty. *Stevenson v. Dollar Tree Stores, Inc.*, 2011 U.S. Dist. LEXIS
     119801, at **12-13 (E.D. Cal. Oct. 14, 2011) (citing *see Ellis v. Pac. Bell Tel. Co.*,
26   2011 U.S. Dist. LEXIS 16045 at *9 (C.D. Cal. Feb. 10, 2011) (holding where there
27   is little evidentiary basis provided in a complaint, "courts must be persuaded that the
     estimates are made in good faith and are reasonable" to rely on);.
28

1    this estimate, and as Plaintiff knows exactly how this estimate was reached, the
2    burden should be on Plaintiff to undermine the reasonableness of this estimate. *See*
3    *Labistilda*, 2010 U.S. Dist. LEXIS 124025 at **9-10 (finding the penalty amount in
4    controversy was based on plaintiff's estimation of penalties as owed and because
5    plaintiff did not directly undermine the reasonableness of this estimate, the case
6    should not be remanded).  Moreover, even if the PAGA damages at issue were only
7    a quarter of what Plaintiff has asserted, that would still be $562,312.50 in potential
8    PAGA damages that can be considered in evaluating the amount in controversy.

9         Furthermore, even though Plaintiff's potential recovery on the rest break
10   class, 203 penalties, and PAGA claims is more than sufficient to meet CAFA's
11   amount in controversy requirement, Defendant is also permitted to include the
12   potential recovery of attorneys' fees to establish that the amount in controversy has
13   been met.  "Where a statutory authority provides for attorneys' fees, the fees are
14   included in the amount in controversy to reach CAFA's $5,000,000." *Chambers v.*
15   *CVS Pharmacy, Inc.*, 2009 U.S. Dist. LEXIS 73472, at * 6 (S.D. Cal. Aug. 19,
16   2009); *see also Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000
17   (9th Cir. 2007) (holding "attorneys' fees were properly included in the amount in
18   controversy in a class action"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696,
19   701 (9th Cir. 2007) (holding attorneys' fees are included in determining amount in
20   controversy in both 28 U.S.C. § 1332(a) and CAFA removal actions); *Galt G/S v.*
21   *JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding attorneys' fees
22   are properly included in determining the amount in controversy, regardless of
23   whether they are mandatory or discretionary).

24        Here, an estimate of Plaintiff's attorneys' fees is 25% of the total recovery.
25   *Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236, at *35 (N.D. Cal. June
26   14, 2013) (finding that when the underlying law provides for attorneys' fees, the
27   Ninth Circuit has found that 25% of the total amount in controversy is a benchmark
28   for attorneys fees); *Jasso v. Money Mart Express, Inc.*, 2012 U.S. Dist. LEXIS

27215, at \*\*20-21 (N.D. Cal. Mar. 1, 2012) (finding even the legal certainty test would be satisfied by including 25% of the aggregate damages assessed for other claims at issue as an award for attorney fees); *Molnar v. 1-800-Flowers.com, Inc.*, 2009 U.S. Dist. LEXIS 131768, at \*14 (C.D. Cal. Feb. 23, 2009) (holding that "a fair estimate of attorneys' fees in this action is 25% of compensatory damages" and this amount can be considered in determining amount in controversy).

An estimate of Plaintiff's attorneys' fees is $1,880,456.40, which is 25% of the aggregate amounts in controversy for other claims included in the data analysis, including 25% of the PAGA claim ($7,521,825.63).  *Second McLaughlin Decl.* ¶ 15. Even if no PAGA penalties were considered, an estimate of Plaintiff's attorneys' fees is $1,317,968.90, which is 25% of the aggregate amounts in controversy for the other claims included in the data analysis ($5,271,875.63).  *Id.*

In summary, Plaintiff has put the following amount in controversy based on Plaintiff's settlement offer:

| | |
|---|---|
| RB Premium | $682,848.08 |
| 203 | $4,589,027.55 |
| 2699 | $2,249,950.00 |
| Attorney Fees | $1,880,456.40 |
| Total | $9,402,282.03 |

Second McLaughlin Decl. ¶ 16.

If PAGA damages are not included at all in the calculation of amount in controversy, the following amount would still be placed in controversy:

| | |
|---|---|
| RB Premium | $682,848.08 |
| 203 | $4,589,027.55 |
| Attorney Fees | $1,317,968.90 |
| Total | $6,589,844.53 |

Second McLaughlin Decl. ¶ 17.

**DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

1       Thus, the total amount in controversy, not including any addition of PAGA

2  damages, is at least $6,589,844.53, well in excess of the $5,000,000 statutory

3  threshold. *See Second McLaughlin Decl.* ¶ 18.[7] "Once the proponent of federal

4  jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the

5  case belongs in federal court unless it is legally impossible for the plaintiff to

6  recover that much." *Lewis*, 627 F.3d at 401-402; *Rhoades v. Progressive Cas. Ins.*

7  *Co.*, 410 F. App'x 10, 11(9th Cir. 2010).

8  **IV.**  **CONCLUSION**

9       For the reasons set forth above, Defendant has demonstrated that the

10  jurisdiction allegations in support of removal are supported by the evidence

11  provided.

12  February 18, 2014

13                 By: _____

14

15           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                  CHARLES F. BARKER

16          VORYS, SATER, SEYMOUR AND PEASE LLP
                  MARK A. KNUEVE

17             NATALIE M. McLAUGHLIN

18              Attorneys for Defendant
            Abercrombie & Fitch Stores, Inc.

19

20

21

22

23

24

25

26    [7]     Based on the RB Premium and potential 203 damages alone, without

27  considering any PAGA damages or any attorneys' fees, the amount in controversy

28  still exceeds $5,000,000.